UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA ZOTTOLA, on behalf of herself
and all others similarly situated,

                              Plaintiff,

                    -against-

EISAI INC., et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-02600 (PMH)

        Barbara Zottola ("Plaintiff") brings this putative class action against Eisai Inc. ("Eisai"),

Arena Pharmaceuticals, Inc. ("Arena"), and CVS Pharmacy, Inc.[1] ("CVS" and collectively,

"Defendants"), alleging that Defendants knew of and failed to disclose that Belviq, a weight loss

drug, posed a high risk of cancer. Plaintiff asserts claims against Defendants for: (1) violation of

New York General Business Law ("NYGBL") § 349 ; (2) violation of NYGBL § 350; (3) breach

of the implied warranty of merchantability; (4) fraud; (5) fraudulent concealment; (6) unjust

enrichment; and (7) conversion. Plaintiff seeks monetary damages, declaratory relief, injunctive

relief, costs and expenses (including attorney's fees), and certification of a putative nationwide

class and New York subclass.

## BACKGROUND

I.    Factual Background

        Eisai and Arena manufactured and distributed the prescription weight loss medications

Belviq and Belviq XR (together, the "Medications").[2] (Doc. 1, "Compl." ¶¶ 1-2). The active

---

[1] CVS was incorrectly sued herein as "CVS Health Co." (Compl. at 1; *see also* Doc. 23 at 1).

[2] Belviq XR is the extended release version of Belviq. (Compl. ¶ 2). Plaintiff refers to both Belviq and
Belviq XR throughout the Complaint, although she alleges only that she purchased and used Belviq. (*Id*. ¶
27).

ingredient in the Medications was lorcaserin, a serotonin receptor agonist, which was intended to reduce appetite. (*Id*. ¶ 2). On February 13, 2020, the U.S. Food and Drug Administration ("FDA") issued a "Drug Safety Communication" advising that the FDA was requesting the withdrawal of the Medications from the market due to the "increased occurrence of cancer" caused by lorcaserin. (*Id*. ¶¶ 3-6, 21).

Plaintiff alleges that Eisai and Arena knew about the elevated cancer risk posed by the Medications "from the early stages of research and development," but nevertheless "pushed forward with the approval process." (*Id*. ¶¶ 1, 8, 15). Specifically, Plaintiff alleges that Eisai and Arena "minimize[ed]," "downplay[ed]," and "obfuscate[ed]" the results of a 2007 "long-term carcinogenic rat study," which "indicated that lorcaserin was causing rare and aggressive tumors in rats." (*Id*. ¶¶ 8-9). The results of the rat study, including the tumor findings, were submitted in February 2009 to the FDA. (*Id*. ¶ 11). The FDA ultimately approved Belviq in June 2012 and Belviq XR in July 2016. (*Id*. ¶ 2).

Plaintiff was prescribed, purchased, and used Belviq several times over the course of two years.[3] (*Id*. ¶ 27). She filled at least one Belviq prescription at a CVS pharmacy in Warwick, New York. (*Id*.). She allegedly "reviewed the accompanying labels and disclosures" when purchasing Belviq and "relied on these representations and warranties" in making her purchases. (*Id*.). Plaintiff seeks to represent a nationwide class of "all persons in the United States who purchased Belviq or Belviq XR" and a subclass of individuals "who purchased Belviq or Belviq XR in New York." (*Id*. ¶¶ 33, 35). Plaintiff and the putative class members were allegedly "injured by the full purchase price of" the Medications, because had "Eisai and Arena been forthright with the FDA regarding

---

[3] Plaintiff does not specifically allege when this two-year period began and ended, nor does she specify the dates on which she purchased Belviq.

the animal studies conducted beginning in 2007, and the true cancer risk of the [M]edications, the [M]edications would never have made it to market." (*Id*. ¶ 27).

II.   Procedural History

Plaintiff filed her Complaint on March 27, 2020. (Compl.). Eisai filed a pre-motion letter regarding its anticipated motion to dismiss on June 5, 2020 (Doc. 21), to which Plaintiff responded on June 12, 2020 (Doc. 22). CVS filed a pre-motion letter regarding its anticipated motion to dismiss on June 17, 2020 (Doc. 23), to which Plaintiff responded on June 24, 2020 (Doc. 24). Arena filed a pre-motion letter regarding its anticipated motion to dismiss on July 10, 2020 (Doc. 32), to which Plaintiff responded on July 17, 2020 (Doc. 34). The Court held a telephonic pre-motion conference on July 29, 2020. (*See* July 29, 2020 Min. Entry).

Defendants, in accordance with the briefing schedule set at the pre-motion conference, moved to dismiss the Complaint on September 9, 2020. (Doc. 41; Doc. 42, "Defs. Br."; Doc. 43, "Eisai Supp. Br."; Doc. 45; Doc. 46, "CVS Supp. Br."; Doc. 47; Doc. 48, "Arena Supp. Br.").[4] Plaintiff filed her opposition to Defendants' joint brief in support of their motions to dismiss, as well as her supplemental opposition briefs on October 29, 2020. (Doc. 49, "Pl. Opp."; Doc. 50; Doc. 51, "Pl. CVS Supp. Opp."; Doc. 52). Defendants filed their joint reply brief and supplemental reply briefs on November 16, 2020. (Doc. 53, "Defs. Reply"; Doc. 54; Doc. 55, "CVS Reply"; Doc. 56).

**STANDARD OF REVIEW**

---

[4] Defendants filed one joint brief in support of this motion to dismiss. Each Defendant was given leave to file a supplemental brief to address issues of law specific to that particular Defendant. Plaintiff was given leave to file one opposition brief and supplemental opposition briefs in response to each Defendant's supplemental brief; and Defendants filed one joint reply brief while each Defendant was given leave to file a supplemental reply brief. (*See* July 29, 2020 Min. Entry).

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## **ANALYSIS**

I.  NYGBL Sections 349 and 350

Plaintiff's first two claims for relief are based on alleged violations of §§ 349 and 350 of the NYGBL. (Compl. ¶¶ 43-65). "Section 349 'prohibits deceptive acts or practices in the conduct

of any business, trade or commerce or in the furnishing of any service in this state.'" *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 476 (2d Cir. 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Section 350 "prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Orlander*, 802 F.3d at 300 (internal quotation marks and brackets omitted). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002)). "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander*, 802 F.3d at 300 (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)).[5]

Defendants argue that Plaintiff fails to state a claim under either § 349 or § 350 because Plaintiff has failed to allege: (1) a cognizable injury; (2) that Defendants engaged in "consumer-oriented conduct"; and (3) that Defendants' conduct was "materially misleading." (Defs Br. at 6-12). The Court agrees.

---

[5] Defendants assert that NYGBL § 350 claims require Plaintiff to plead an additional element of "actual reliance." (*See* Defs. Br. at 6.) But this element appears to have been foreclosed by the opinion of the New York Court of Appeals in *Koch*, 967 N.E.2d 675, which held that "[j]ustifiable reliance by the plaintiff is not an element of [a § 350] claim."). Since *Koch* was decided, some courts have continued to hold that NYGBL § 350 claims require proof of "actual reliance"—an element arguably excluded from the scope of *Koch*'s holding, *see, e.g.*, *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013)—while others have held that "neither Section 349 nor 350 require proof of reliance," justifiable or otherwise. *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). Nevertheless, the Second Circuit recently described the uniform nature of the tests under NYGBL §§ 349 and 350, *see Orlander*, 802 F.3d at 300, and thus "it appears to this Court that no reliance element remains to § 350 claims," *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 n.2 (S.D.N.Y. 2017), *aff'd sub nom. Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43 (2d Cir. 2018).

*First*, Plaintiff fails to allege that she suffered a cognizable injury because she merely alleges that she and other class members "would not have purchased [the Medications] if they knew the [M]edications caused a significantly elevated risk of cancer." (Compl. ¶¶ 64, 75). Under New York law, a plaintiff's allegation that he or she bought a product that he or she "would not have purchased, absent a manufacturer's deceptive commercial practices" is insufficient to establish a cognizable injury under NYGBL §§ 349 and 350. *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999). Therefore, Plaintiff's theory of injury here is a nonstarter.

The plaintiffs, in *Small v. Lorillard Tobacco Company*, alleged that they would not have purchased cigarettes had they known that nicotine was addictive. *See* 720 N.E.2d at 898. According to the plaintiffs, however, addiction was not their injury; rather, they were injured by paying the purchase price of cigarettes without being able to make "free and informed choices as consumers" due to the defendant cigarette company's alleged misrepresentations. *Id*. The Court of Appeals held that this "definition of injury is legally flawed" because the plaintiffs did not allege that "the cost of cigarettes was affected by the alleged misrepresentation" regarding the addictive nature of nicotine, "nor [did] they seek recovery for injury to their health as a result of their ensuing addiction." *Id*.; *see also Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007) (holding that plaintiff's allegation that she "would not have purchased" the prescription drug Neurontin "absent defendant's deceptive practices" was insufficient to set forth a cognizable injury).

Here, as in *Small*, Plaintiff alleges that she and other putative class members would not have purchased the Medications absent Defendants' alleged misrepresentations regarding the cancer risk posed by lorcaserin. (Compl. ¶¶ 64, 75). Crucially, Plaintiff does not allege that Defendants' alleged misrepresentation affected the Medications' price,[6] nor does she allege that

---

[6] Plaintiff, in one of her pre-motion letters, attempts to assert an alternative theory of injury, stating that she paid a "premium in the amount of the full purchase price" of Belviq due to Defendants' alleged

she or any of the putative class members suffered from cancer or other health problems as a result of using the Medications. Their alleged injury was purely economic: the purchase price of the Medications. Accordingly, Plaintiff merely attempts to plead "deception as both act and injury"—a theory time and again rejected by New York courts. *Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S.2d 153, 154 (App. Div. 2004); *see also Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012).

*Second*, Plaintiff has not adequately alleged that Defendants engaged in "consumer-oriented" conduct. That is because, "the generally alleged deceptive practice of failing to provide adequate warnings by concealing information is, as a matter of law, not a practice directed at consumers." *Wholey v. Amgen, Inc.*, 86 N.Y.S.3d 16, 17-18 (App. Div. 2018). "Except where FDA regulations otherwise provide, the manufacturer's duty is to warn the doctor, not the patient." *Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87, 91 (2d Cir. 1980); *see also Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 173 (W.D.N.Y. 2014) ("New York state has adopted the 'informed intermediary doctrine,' which provides that the duty to warn of a drug's side effects and risks runs to the doctor prescribing the drug, and not to patient taking the drug."). "The doctor acts as an 'informed intermediary' between the manufacturer and the patient, evaluating the patient's needs, assessing the risks and benefits of available drugs, prescribing one, and supervising its use." *Lindsay*, 637 F.2d at 91.

Here, Plaintiff alleges that Defendants engaged in "deceptive, unfair, and misleading acts and practices" by "misrepresenting" that the Medications were "fit for use as a weight loss

---

misrepresentations. (Doc. 22 at 3 n.3). To be sure, "[i]njury is adequately alleged under [NYGBL] §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman v. Coca-Cola Co.*, No. 09-CV-00395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010). Here, however, Plaintiff's "price premium" theory appears nowhere in the Complaint. Therefore, the Court need not, and does not, consider it on this motion.

medication[] when in fact [they] caused a significantly elevated risk of cancer." (Compl. ¶ 59). But under the "informed intermediary" doctrine, it was the duty of doctors—not Defendants—to disclose the Medications' cancer risks to patients, i.e., consumers. Accordingly, and as a matter of law, Defendants' alleged deception by failing to disclose the Medications' cancer risks was not "consumer-oriented" conduct. *See, e.g.*, *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 250 (S.D.N.Y. 2013) (dismissing NYGBL § 349 claim where plaintiff "alleges that [defendant] deceived the FDA, but he does not explain how this allegedly improper conduct was 'consumer-oriented'"); *Amos*, 28 F. Supp. 3d at 174 (dismissing NYGBL § 349 claim because "defendants' alleged deceptive practice of failing to provide adequate warnings by concealing information is not, as a matter of law, a practice directed at consumers," and therefore "plaintiff has failed to allege a consumer-oriented practice").

Plaintiff counters that it is "wrong" to apply the "informed intermediary" doctrine here, because Belviq was not a "life-saving medication," and instead, was "more akin to a consumer product." (Pl. Opp. at 5). But Plaintiff's purported exception to the "informed intermediary" doctrine for non-lifesaving medications fails for two reasons. First, Plaintiff cites no case law to support this purported exception to the doctrine. Second, the nature of the drug is irrelevant to the Court's analysis, because what matters is whether Defendants' *conduct* was consumer-oriented— not whether the Medications themselves were. As the "informed intermediary" doctrine makes clear, Defendants' alleged conduct here, i.e., "[t]he generally alleged deceptive practice of failing to provide adequate warnings [for a prescription drug] by concealing information is, as a matter of law, not a practice directed at consumers." *Wholey*, 86 N.Y.S.3d 16. Accordingly, Plaintiff fails to plausibly allege that Defendants' conduct was "consumer-oriented."

*Third*, Plaintiff has not adequately alleged that Defendants' conduct was "materially misleading" to consumers. To be "materially misleading," the alleged act or practice "must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Orlander*, 802 F.3d at 300 (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)). "[A] [p]laintiff is required to set forth specific details regarding the allegedly deceptive acts or practices." *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997). Allegations "based upon 'information and belief'" are insufficient. *Id.*

Here, Plaintiff alleges, "based upon information and belief" (Compl. at 1), that "Defendants have engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that [the Medications] (i) were fit for use as a weight loss medication[] when in fact [they] caused a significantly elevated risk of cancer . . ., and (ii) are generally recognized as safe for human consumption." (*Id.* ¶ 59). These allegations, Plaintiff contends, are "nearly identical[]" to those that were deemed sufficient to survive a motion to dismiss in *O'Neill v. Standard Homeopathic Company*, 346 F. Supp. 3d 511, 530 (S.D.N.Y. 2018). (Pl. Opp. at 7). But Plaintiff's reliance on *O'Neill* is misplaced.

Judge Karas, in *O'Neill*, denied a motion to dismiss when presented with allegations that plaintiffs "purchased [d]efendants' products as a result of [d]efendants' misleading advertisements concerning the purported safety of their products and sustained injury when [d]efendants (and the FDA) instructed consumers to discard [defendants' products] because they posed an unsafe risk to infants and toddlers." *Id.* at 530. Although Plaintiff's allegations here are similar in nature to those in *O'Neill*, they differ in their level of specificity. Notably, the *O'Neill* plaintiffs went on to "identif[y] specific misleading statements in marketing materials and on the defendant[s'] website" (Defs. Reply at 5), including a statement that "a 10-pound child would have to accidentally ingest,

all at the same time, more than a dozen bottles of [defendants' product] before experiencing certain adverse effects," *O'Neill*, 346 F. Supp. 3d at 518. Here, unlike in *O'Neill*, Plaintiff only refers to unspecified misleading representations contained in the Medications' "labels and disclosures," as opposed to challenging a particular representation and explaining how it was misleading. (Compl. ¶ 27).

Plaintiff argues in the alternative that she does not need to specify any misleading statements to sustain her NYGBL §§ 349 and 350 claims because such claims are "omission-based," and therefore, there are no statements to identify. (Pl. Opp. at 8). To that end, she argues that Eisai and Arena "had knowledge of the defect in [the Medications]" and "failed to disclose it." (*Id*. at 8-9). This argument is unavailing, because as Defendants point out: Plaintiff "affirmatively alleges that Defendants *did* disclose" the Medications' alleged defect by providing the results of the rat study to the FDA during the approval process. (Defs. Reply. at 5 (citing Compl. ¶¶ 9, 14)). And, in any event, to the extent Plaintiff's "omission-based" argument is premised on Defendants' non-disclosure to consumers of the Medications' health risks, this argument is foreclosed by the "informed intermediary" doctrine, which holds that Defendants had no duty to make such disclosures. *See, e.g.*, *Amos*, 28 F. Supp. 3d at 173.

Because Plaintiff fails to sufficiently plead (1) a cognizable injury; (2) that Defendants engaged in consumer-oriented conduct; or (3) that Defendants engaged in any materially misleading acts or practices, her NYGBL §§ 349 and 350 claims are dismissed.[7] *See, e.g.*, *Perez v. B. Braun Med., Inc.*, No. 17-CV-08512, 2018 WL 2316334, at *6 (S.D.N.Y. May 9, 2018) (dismissing NYGBL §§ 349 and 350 claims where plaintiff "fail[ed] to show what materially

---

[7] Defendants also argue that Plaintiff's NYGBL § 350 claim fails because "she has not identified any 'advertising' at all." (Defs. Reply at 5; *see also* Defs. Br. at 11-12). The Court agrees. Plaintiff's § 350 claim is therefore dismissed on this independent, alternative ground as well.

misleading representations defendants made"); *Quintana v. B. Braun Med. Inc.*, No. 17-CV-06614, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (dismissing NYGBL §§ 349 and 350 claims where plaintiff solely alleges that "(1) [d]efendants represented on their website and in their brochure that [their product] was safe for its intended uses but knew it was defective; (2) they knew the falsity of their representations about [the product's] safety, which [p]laintiff and her physician justifiably relied upon to her detriment; and (3) [d]efendants' misrepresentations proximately caused her injuries").

II.   <u>Conversion</u>

"Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (citation omitted). "[A]n action for conversion of money only exists when 'there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.'" *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 409 (S.D.N.Y. 2012) (quoting *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009)).

Defendants argue that Plaintiff's conversion claim fails because Plaintiff has: (1) "not alleged the existence of an identifiable fund of money"; and (2) "failed to allege facts showing that her purchase of a medication prescribed by a physician resulted in Defendants' exercising 'unauthorized dominion' over her property." (Defs. Br. at 22). The Court agrees.

Plaintiff, in her Complaint, alleges that she has "an ownership right to the monies paid for Belviq and that "Defendants . . . wrongly asserted dominion" over this money. (Compl. ¶¶ 100-01). These allegations are insufficient to state a conversion claim. First, although Plaintiff asserts that she "paid specific amounts to Defendants" (Pl. Opp. at 21), she still fails to identify a specific

"fund of money." *Mazzola*, 849 F. Supp. 395 at 409. Second, even if Plaintiff did identify such a fund (which she does not), her allegation that Defendants have "wrongly asserted dominion" over it is conclusory at best. (Compl. ¶ 101). Third, the theory that Plaintiff's payment of a premium price for Belviq creates a claim for conversion, on these facts, is misplaced.

Plaintiff's conversion claim is, accordingly, dismissed.

III.   Plaintiff's Remaining Claims for Relief

Plaintiff's remaining claims for relief—implied warranty of merchantability, fraud, fraudulent concealment, and unjust enrichment—are based on Plaintiff's allegations that Defendants misled consumers by concealing the cancer risks associated with the Medications. Because the Court has already determined that Plaintiff has failed to allege that Defendants' conduct would be likely to deceive or mislead a reasonable consumer, these claims for relief are also dismissed for the reasons already stated. *See, e.g.*, *Gilleo v. The J.M. Smucker Co.*, No. 20-CV-02519, 2021 WL 4341056, at *7 (S.D.N.Y. Sept. 23, 2021); *Dashnau v. Unilever Mfg. (US), Inc.*, No. 19-CV-10102, 2021 WL 1163716, at *8 (S.D.N.Y. Mar. 26, 2021); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. Jan. 7, 2021). The Court, however, will briefly detail the additional ways in which these claims fail as a matter of law.

A.   Breach of the Implied Warranty of Merchantability

"Section 2-314 of the Uniform Commercial Code (which has been adopted by New York) states that 'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind,' and must be, in relevant part, 'fit for the ordinary purposes for which such goods are used.'" *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 309 (N.D.N.Y. 2019) (quoting N.Y. U.C.C. § 2-314). "'To establish that a product is defective for the purposes of a breach of implied warranty of merchantability claim, a plaintiff

must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.'" *Id.* (quoting *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 701 (App. Div. 2004)).

"The law is clear that, absent any privity of contract between Plaintiff and Defendant, a breach of implied warranty claim cannot be sustained as a matter of law except to recover for personal injuries." *Gould v. Helen of Troy Ltd.*, 16-CV-02033, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017) (quotation marks omitted). That is to say, "New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556-57 (S.D.N.Y. 2016).

Here, Plaintiff only alleges economic damages, not personal injuries. Accordingly, Plaintiff must allege privity with Defendants in order to state a claim for breach of implied warranty against them. Plaintiff, in her Complaint, alleges that she purchased Belviq at a CVS location in Warwick, New York on at least one occasion. (Compl. ¶ 27). But nowhere does she allege that she purchased the Medications directly from Eisai or Arena. (*See* Eisai Supp. Br. at 2; Arena Supp. Br. at 4).

Accordingly, Plaintiff's breach of implied warranty claim is dismissed as to Eisai and Arena for lack of privity.[8]

Although Plaintiff has alleged privity with CVS, CVS argues that New York law shields it from liability for breach of implied warranty "merely for filling a prescription as written." (CVS Supp. Br. at 1). CVS relies principally on *In re Rezulin Products Liability Litigation*, which found

---

[8] Plaintiff, in her supplemental brief in opposition to CVS's supplemental moving brief, concedes that her "claim for breach of the implied warranty of merchantability . . . can **only** be brought against CVS, with whom Plaintiff and Class members are in vertical privity." (Pl. CVS Supp. Opp. at 1 (emphasis in original)).

that "almost every state that has considered the issue has declined to find pharmacists liable for breach of either implied or express warranty with respect to properties of prescription drugs." 133 F. Supp. 2d 272, 292 (S.D.N.Y. 2001); *see also id.* (explaining that the "goal" of imposing liability for breach of warranty "is lost on pharmacists, who have little or no impact on a manufacturer's marketing of prescription drugs"). That is because

> there is no basis for adopting the view that a pharmacist is a retail merchant like any other with respect to the sale of prescription drugs. A pharmacist's sales of prescription drugs are not attributable to his or her marketing the properties of the drugs. They are attributable to physicians' prescriptions.

*Id.*

Plaintiff argues in opposition that CVS is not immune from liability for breach of implied warranty because such immunity lies only in personal injury cases, as opposed to economic damages cases. The reasoning goes that, in personal injury cases, courts dismiss breach of implied warranty claims against pharmacies "because the privity requirement is dispensed with and the plaintiff may recover directly from the manufacturer." (Pl. CVS Opp. at 1). Therefore, Plaintiff argues, to also preclude such claims from proceeding against pharmacies in economic damages cases would effectively close the courthouse doors on consumers seeking to sue pharmacies. (*See id.*). But Plaintiff cites no case law to support her position, and this Court refuses to create a theory of liability that undercuts the routine practice of New York courts, which is to dismiss breach of implied warranty claims against pharmacies. *See, e.g.*, *O'Neill*, 346 F. Supp. 3d at 532 (dismissing breach of implied warranty claim because pharmacies "cannot be held liable . . . for a safety defect they could not have plausibly discovered"); *Ullman v. Grant*, 450 N.Y.S.2d 955, 956 (Sup. Ct. 1982) (dismissing breach of implied warranty claim against pharmacy); *Bichler v. Willing*, 397 N.Y.S.2d 57, 58 (App. Div. 1977) (same); *In re Rezulin Prod. Liab. Litig.*, 133 F. Supp. 2d at 292.

Accordingly, Plaintiff's breach of implied warranty claim is also dismissed as to CVS.

B.   <u>Fraud and Fraudulent Concealment</u>[9]

Plaintiff's fraud and fraudulent concealment claims similarly fail for two reasons. First, for the same reasons as discussed above, Plaintiff fails to allege a cognizable injury. Second, Plaintiff's allegations fall short of the heightened pleading standard under Federal Rule of Civil Procedure 9(b).

i.   *Cognizable Injury*

Defendants argue that, as with Plaintiff's NYGBL claims, Plaintiff's fraud and fraudulent concealment claims are defective because Plaintiff's alleged injury—that she would not have paid the purchase price for Belviq but for Defendants' deceptive conduct—is not legally cognizable. Plaintiff counters that she suffered actual injury because she "did not 'receive the full value of [her] purchase.'" (Pl. Opp. at 12 (citing *Orlander*, 802 F.3d at 302)). Plaintiff, however, points to no case law contrary to that cited by Defendants. Therefore, for the same reasons as discussed in the context of Plaintiff's NYGBL claims, *see supra*, the Court agrees with Defendants, *see, e.g.*, *Small*, 720 N.E.2d at 898 ("The flaw in plaintiffs' statutory claim foretells the inadequacy of the common-law claims: an act of deception, entirely independent or separate from any injury, is not sufficient to state a cause of action under a theory of fraudulent concealment. Thus, plaintiffs' common-law fraud claims also fail."); *Donahue*, 786 N.Y.S.2d  at 154-55 (dismissing fraud claims because plaintiffs "impermissibly set up the deception as both act and injury," and therefore "failed to allege a cognizable injury").

ii.   *Rule 9(b)*

---

[9] Plaintiff, in one of her pre-motion letters, concedes that she "will only pursue [her] common law fraud claims against [Eisai and Arena], and will not pursue them against CVS." (Doc. 23-1 at 4 n.2). Accordingly, Plaintiff's fraud and fraudulent concealment claims are, on this basis, dismissed as to CVS.

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)); *see also Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 WL 5505351, at *10 (S.D.N.Y. Sept. 10, 2020) ("There are two types of claims for fraud in New York: '[f]raud by affirmative misrepresentation, or actual fraud, and fraud by omissions, or fraudulent concealment . . . .'" (quoting *Wiedis v. Dreambuilder Invs., LLC*, 268 F. Supp. 3d 457, 466 n.3 (S.D.N.Y. 2017) (alterations in original)). "To establish fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995).

"In addition, the Federal Rules of Civil Procedure require a heightened level of specificity when pleading claims sounding in fraud. Specifically, in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake, the who, what, when, where, and how: the first paragraph of any newspaper story." *Somnia, Inc. v. Change Healthcare Tech. Enabled Servs., LLC*, No. 19-CV-08983, 2021 WL 639529, at *3 (S.D.N.Y. Feb. 16, 2021) (cleaned up). "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

For the following reasons, Plaintiff has failed to allege—with the requisite specificity—the elements of her claims for fraud or fraudulent concealment:

*First*, Plaintiff fails to specify a misrepresentation or omission made by Defendants. Plaintiff pleads generally that Defendants did not disclose the Medications' cancer risks to consumers. But this type of vague allegation, without more, is insufficient to plead a fraud or fraudulent concealment claim under Rule 9(b). *See, e.g.*, *Quintana*, 2018 WL 3559091, at *8 (dismissing fraudulent inducement and fraudulent concealment claims where plaintiff alleged "that [d]efendants misrepresented the product as safe without disclosing the full breadth of the known risks of the [product], and that [d]efendants omitted that the [product] was defective and could cause dangerous side effects").[10]

*Second*, Plaintiff's allegations that Defendants "knew" of and concealed the allegedly defective nature of the Medications, without more, are conclusory, and therefore, insufficient to satisfy the scienter element of her fraud or fraudulent concealment claims. (Compl. ¶¶ 1, 8, 93, 95).

*Third*, Plaintiff fails to allege facts sufficient to establish that Defendants acted with fraudulent intent. Indeed, any notion that Defendants acted with fraudulent intent is undercut by Plaintiff's own description of the FDA approval process for the Medications, during which Defendants affirmatively disclosed the findings of the 2007 rat study to the FDA during the drug approval process. (Compl. ¶¶ 9-14); *see also Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (Rule 9(b) dismissal upheld where allegations undercut inference of fraudulent intent).

---

[10] To the extent Plaintiff's fraud and fraudulent concealment claims are premised on Defendants' failure to disclose the Medications' cancer risks to the FDA, the U.S. Supreme Court held in *Buckman Company v. Plaintiffs' Legal Committee* that such "fraud-on-the-FDA" claims are preempted by the Federal Food Drug and Cosmetic Act. 531 U.S. 341, 343 (2001).

*Fourth*, Plaintiff fails to allege that she reasonably relied on Defendants' alleged misrepresentations or omissions. She merely alleges, in conclusory fashion, that she "reasonably relied" on Defendants' omissions, and that absent such omissions, she would not have purchased the Medications. (Compl. ¶¶ 27, 88, 94). Plaintiff, however, does not specify the information she relied on—she simply alleges that she reviewed Belviq's "labels and disclosures." (*Id.* ¶ 27). Such allegations, without more, are insufficient to satisfy the reliance element of Plaintiff's fraud and fraudulent concealment claims. *See, e.g.*, *Bustamante v. Atrium Med. Corp.*, No. 18-CV-08395, 2020 WL 583745, at *8 (S.D.N.Y. Feb. 6, 2020) (dismissing fraud claim as inadequately pled where complaint contained only "conclusory allegations such as, '[p]laintiff . . . through his physicians and healthcare providers, and his physicians reasonably relied upon [d]efendants' misrepresentations and omissions regarding the safety and efficacy of [the] product'"); *Olson v. Major League Baseball*, 447 F. Supp. 3d 159, 167-68 (S.D.N.Y. 2020) (concluding that complaint's "generalized allegations of reliance" were insufficient, particularly where the complaint failed to specify any particular representations); *Quintana*, 2018 WL 3559091, at *8 (dismissing fraudulent inducement and fraudulent concealment claims where plaintiff alleged that she and her physicians "reasonably relied" on defendants' representations).

*Fifth*, Plaintiff has not sufficiently alleged that any misrepresentations or omissions caused her harm, because, as discussed above, she has failed to allege a cognizable injury. (*See supra* Section III.B.i).

*Lastly*, in the context of Plaintiff's fraudulent concealment claim, Plaintiff has failed to allege that Defendants had a duty to disclose the Medications' alleged cancer risks to her. That is because, as discussed above, the "informed intermediary" doctrine imposes the duty to warn

patients of potential side effects and health risks upon doctors, not manufacturers. *See, e.g.*, *Amos*, 28 F. Supp. 3d at 173 (W.D.N.Y. 2014); (*see also* discussion *supra*).

C.  Unjust Enrichment[11]

"To state a claim for unjust enrichment under New York law, a plaintiff must allege that '(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Baron*, 840 N.Y.S.2d at 448). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Nor is it "a catchall cause of action to be used when others fail." *Id.*

Defendants argue that Plaintiff's unjust enrichment claim duplicates her other claims for relief. Specifically, Defendants argue that: (1) Plaintiff's unjust enrichment claim is premised on the same conduct as her other claims—i.e., that Plaintiff would not have purchased Belviq, but for Defendants' allegedly deceptive conduct; and (2) the Complaint does not set forth specific allegations regarding unjust enrichment, but merely "incorporates by reference the allegations contained in the preceding paragraphs." (Compl. ¶¶ 77-81). Plaintiff counters that her allegations are sufficient to state an unjust enrichment claim because she "conferred a benefit on Defendants in the form of monies paid to purchase" the Medications and "this benefit was obtained unlawfully" due to Defendants' misrepresentations about the Medications' cancer risks. (Compl. ¶¶ 79, 81). Plaintiff asserts, therefore, that "it would be unjust and inequitable for the Defendants to retain" such benefit. (*Id.* ¶ 81).

---

[11] Defendants argue that Plaintiff's unjust enrichment claim is subject to Rule 9(b)'s heightened pleading standard because it is "fully duplicative of her fraud claim." (Defs Br. at 19). The Court need not, and does not, address this argument, because in any event, Plaintiff fails to state an unjust enrichment claim under the more lenient Rule 12(b)(6) standard.

Defendants analogize Plaintiff's allegations to other cases in which unjust enrichment claims were dismissed as duplicative of tort claims. *See, e.g.*, *Koenig*, 995 F. Supp. 2d at 290 (dismissing unjust enrichment claim as duplicative of NYGBL § 349 and breach of express warranty claims where plaintiffs alleged that they purchased defendants' product because of defendants' alleged misrepresentations, and defendants allegedly retained the revenue from such purchases); *Corsello*, 967 N.E.2d at 1185 (dismissing unjust enrichment claim because, to the extent plaintiffs' tort claims succeed, "the unjust enrichment claim is duplicative," and if plaintiffs' tort claims "are defective, an unjust enrichment claim cannot remedy the defects"); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 222 (S.D.N.Y. 2019) (dismissing unjust enrichment claim where "plaintiffs have offered no distinction for how the unjust enrichment claim differs from their tort claims"). Plaintiff's unjust enrichment claim—like those brought in *Koenig*, *Corsello*, and *In re Fyre Festival*—relies on the same theory of liability as her tort claims, and is therefore duplicative.

Accordingly, Plaintiff's unjust enrichment claim is dismissed.[12]

IV.  <u>Class Action Allegations</u>

---

[12] Plaintiff argues that her unjust enrichment claim is permitted by Federal Rule of Civil Procedure 8(d)(3), which provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." "While parties are . . . permitted to plead inconsistent claims" under Rule 8(d)(3), Plaintiff's argument nevertheless fails to revive her unjust enrichment claim, as the Court concludes that such claim is "unnecessary and duplicative" of her tort claims. *In re Novartis & Par Antitrust Litig.*, No. 18-CV-11835, 2019 WL 3841711, at *7 (S.D.N.Y. Aug. 15, 2019) (dismissing unjust enrichment claim, despite plaintiffs' argument that it should be permitted in the alternative Rule 8(d)(3), because such claim was duplicative of plaintiffs' statutory claims). Plaintiff's unjust enrichment claim is not a substitute for defective statutory and common law claims. *See, e.g.*, *Koenig*, 995 F. Supp. 2d at 291 (holding that "to the extent that [p]laintiffs' other claims succeed, the unjust enrichment claim is duplicative, and if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." (internal quotation marks omitted)); *Hua Xue v. Jensen*, No. 19-CV-01761, 2020 WL 6825676, at *13 (S.D.N.Y. Nov. 19, 2020) (holding that "an unjust enrichment claim is not a substitute for [plaintiff's] failure to properly plead her fraud claims").

Plaintiff, in her Complaint, seeks to represent a putative nationwide class and New York subclass. (Compl. ¶¶ 33-42). However, "[a] predicate to a plaintiff's right to represent a class is h[er] eligibility to sue in h[er] own right. What [s]he may not achieve [her]self, [s]he may not accomplish as a representative of a class." *In re Initial Pub. Offering Sec. Litig.*, 341 F. Supp. 2d 328, 344 (S.D.N.Y. 2004). Here, because Plaintiff's Complaint is dismissed in its entirety, the Court need not, and does not, address her class action allegations.[13]

V.   <u>Leave to Amend</u>

Plaintiff, in her opposition brief, devotes one sentence to a request for leave to amend if Defendants' motion to dismiss is granted in any part. "Plaintiff's request to amend, contained solely in [her] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading is improper under Fed. R. Civ. P. 15." *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 904 n.4 (E.D.N.Y. 2018). The nature of Plaintiff's request is especially improper where, as here, Plaintiff has had ample opportunity to amend her Complaint. Indeed, Plaintiff could have amended her Complaint as of right within twenty-one days of serving it, *see* Fed. R. Civ. P. 15(a)(1)(A), or within twenty-one days of the filing of Defendants' motion to dismiss, *see* Fed. R. Civ. P. 15(a)(1)(B). Additionally, under this Court's Individual Practice Rule 4.C., Plaintiff had the opportunity to seek leave to amend after the first exchange of pre-motion letters.

The Second Circuit has indicated that "when a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny

---

[13] Defendants argue that Plaintiff's class action allegations should be dismissed or stricken because the Court lacks personal jurisdiction over the claims of non-resident putative class members. (*See* Defs. Br. at 23-25). Because Plaintiff's Complaint is dismissed in its entirety, the Court need not, and does not, address this argument.

leave to amend." *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) (quoting *Porat*, 464 F.3d at 276). In particular, where, as here, Plaintiff "requested leave to amend in a cursory manner without any explanation for how [she] would be able to cure the [C]omplaint's defects," the Court may simply deny leave to amend by dismissing the offending Complaint with prejudice. *Id*.

In light of the foregoing, the Court denies Plaintiff's request for leave to amend.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Complaint with prejudice.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 41; Doc. 45; and Doc. 47, and to close this case.

**SO ORDERED:**

Dated:   White Plains, New York
         September 29, 2021

_____
PHILIP M. HALPERN
United States District Judge